IN RE the ESTATE OF Monica ERMENC, by Joseph Ermenc, Personal Representative, Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 98–0531. Submitted on briefs July 20, 1998.—Decided August 19, 1998.*

(Also reported in 585 N.W.2d 679.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul F. Reilly* of *Hippenmeyer, Reilly & Moodie, S.C.* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *M. Christine Cowles* and *Angela M. Rogers* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J. The estate of Monica Ermenc appeals from a grant of summary judgment to American Family Mutual Insurance Company. The estate commenced an action against American Family for breach of contract and bad faith after American Family denied a claim for $31,694.76 in medical bills which Monica incurred while being treated for stomach cancer. The trial court granted summary judgment to American Family finding that Monica's stomach cancer was not a covered sickness under the policy and that the stomach cancer was a preexisting condition.

The underlying facts are not in dispute. In May 1996, Monica went to her doctor because of abdominal pain. The doctor examined her, diagnosed epigastric pain, gave Monica samples of the medicine Tagamet and told her to come back for further tests if she got worse. Four days later, Monica went to the emergency room. The doctor there diagnosed probable peptic ulcer disease and sent Monica home with more Tagamet.

Unfortunately, Monica's stomach pains continued. On June 27, 1996, she was admitted into the hospital. Dr. Paul O'Neill, her treating physician, discovered a palpable mass in her stomach area. Testing revealed blood in her stool. These symptoms led O'Neill to order further tests and "innumerable metastatic liver lesions" were discovered. Monica died two weeks later.

Monica had bought a short-term health insurance policy which went into effect on June 18, 1996. After her death, the estate sought payment of her medical bills. American Family denied coverage contending that Monica already had cancer when she bought the policy. American Family asserts that this brings her claim outside the policy for two separate reasons. First,

Monica's cancer was not covered because it was not a "covered sickness" under the terms of the policy. Second, even if it were a covered sickness, it was excluded from coverage as a preexisting condition. We reverse the trial court's grant of summary judgment.

This appeal presents two issues of contract law. First, was Monica's stomach cancer a covered sickness under the policy? Second, was Monica's stomach cancer a preexisting condition?

## Standard of Review and Burden of Proof

■ When facts are undisputed and the sole issue is the interpretation of an insurance policy, a question of law is presented which is appropriately decided on summary judgment. *See Greene v. General Cas. Co.*, 216 Wis. 2d 152, 157, 576 N.W.2d 56, 59 (Ct. App. 1997). We review the trial court's decision to grant summary judgment de novo, applying the same methodology. *See id.* Furthermore, the interpretation of an insurance policy is a question of contract law that we review de novo without deference to the trial court. *See id.*

■ The insured has the initial burden to show coverage, while the insurer has the burden of proving any exception to coverage. *See Just v. Land Reclamation, Ltd.*, 151 Wis. 2d 593, 605, 445 N.W.2d 683, 688 (Ct. App. 1989), *rev'd on other grounds*, 155 Wis. 2d 737, 456 N.W.2d 570 (1990).

## Covered Sickness

Monica's policy defines covered sickness as "a condition which is first evident while this policy is in force." "Condition" is not defined in the policy. "Evident" is defined as:

1. Symptoms existing which would cause an ordinarily prudent person to seek diagnosis or treatment, or

2. Diagnosed or treated by a physician.

Under the terms of the policy, Monica's cancer is a covered sickness if it was "first evident" after the policy began. According to the policy definition, a sickness becomes evident when symptoms exist which would cause an ordinarily prudent person to seek diagnosis or treatment or when the sickness is actually diagnosed or treated.

Monica did have symptoms which caused her to seek treatment. But the policy definition of "evident" is part of the definition of "condition." Therefore, the symptoms must be produced by the condition. The question remains whether Monica's May condition was symptomatic of stomach cancer, thus making it a condition evident before rather than after the policy began.

In May, Monica's symptoms included gastric pain, some difficulty breathing and one occasion of spitting up blood. The two physicians she saw in May treated her for gastritis and a possible peptic ulcer. Both doctors noted a lack of blood in her stool. In late June this changed. The presence of blood in her stool and the discovery of a palpable mass in her abdomen caused O'Neill, the physician who treated her in late June, to run further tests. These tests revealed cancer. O'Neill, on the insurance claim form, noted the "date of first symptoms" as June 27, 1996. American Family's claim representative concedes that Monica's May symptoms—chiefly gastric pain—"could have been caused by cancer or a number of different things."

In hindsight, we now know that the May symptoms were probably caused by the cancer. However, at the time Monica sought treatment, no one knew that. Monica saw two doctors, neither of whom noted any suspicion of cancer in his report. Later, the discovery of the palpable mass and the guaiac positive test result (showing blood in the stool) led to a diagnosis of cancer. This was after the policy was in force. Only then could the symptoms be recognized as cancer. Cancer is the condition at issue. Because the symptoms of cancer, the palpable mass and blood in the stool, were not evident until after the policy was in force, the cancer is a covered sickness under the terms of the policy.

### Preexisting Condition

The policy defines "pre-existing condition" as

. . . a sickness, injury, disease or physical condition:

1. For which the covered person received medical treatment or advice from a physician within the 5 year period immediately preceding that covered person's effective date of coverage; or

2. Which produced signs or symptoms within the 5 year period immediately preceding that covered person's effective date of coverage which should have caused an ordinarily prudent person to seek diagnosis or treatment.

As discussed above, Monica did seek treatment for symptoms which we now know likely were caused by her cancer. Although American Family's claims adjuster found that Monica's cancer was preexisting due to these symptoms, this characterization relies upon subsequent events. The most that can be said about the May symptoms is that they are not inconsis-

483

tent with the June diagnosis of cancer. The doctors Monica saw in May did not even hint at a diagnosis of cancer, or even note that they suspected it. They therefore did not advise or treat Monica for cancer before the effective date of the policy.

■

In other words, the fact that Monica had some symptoms which later proved consistent with cancer is insufficient to support a denial on preexistence grounds. Monica's symptoms were also consistent with a variety of other ailments she did not ultimately suffer, such as the peptic ulcer her doctor suspected. To permit such backward-looking reinterpretation of symptoms to support claims denials would so greatly expand the definition of preexisting condition as to make that term meaningless: any prior symptom not inconsistent with the ultimate diagnosis would provide a basis for denial. Such an interpretation would render insurance contracts nonsensical. We are duty bound to avoid unreasonable interpretation of contracts. *Cf. City of Edgerton v. General Cas. Co.*, 172 Wis. 2d 518, 551–52, 493 N.W.2d 768, 782 (Ct. App. 1992), *aff'd in part and rev'd in part*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994) ("Insurance contracts should be given a reasonable interpretation and not one which leads to an absurd result.").

Other jurisdictions have addressed the issue of when symptoms are recognizable enough to characterize a condition as preexisting. In *Rabalais v. Louisiana Health Service and Indemnity Co.*, 671 So. 2d 7 (La. Ct. App. 1996), a woman went to the emergency room due to abdominal pain and was diagnosed and treated for gallstones. *See id.* at 8. Seven months later, she was again admitted to the hospital with abdominal pain. She was diagnosed and treated for an inflamed gall-

bladder, which was removed. *See id.* In between these hospital visits, she had bought an insurance policy. When she filed a claim for her medical expenses for the gallbladder removal, the insurance company refused to pay, contending that the surgery was for a preexisting condition. *See id.* On review of a grant of summary judgment to the insurance company, the appellate court reversed. *See id.* There was no proof that the two treatments were for the same condition, even though the symptoms were the same. *See id.* at 9.

Similarly, in *Bunk v. Blue Cross and Blue Shield of Utica-Watertown, Inc.*, 648 N.Y.S.2d 291 (N.Y. Sup. Ct. 1996), the insured sought medical attention for abdominal pain on three separate occasions. A week later, further tests showed that she had Burkitt's Lymphoma. Blue Cross denied coverage since she was "trying to obtain coverage in connection with [a] disease, illness, ailment, or other condition for which she either received or had suggested medical or surgical advice or treatment within 6 months before her coverage . . . began." *Id.* at 294. The court, in interpreting a New York statute governing permissible preexisting condition exclusions, found "no statutory authority or sound logic which permits any non-specific symptom to be used as a trigger for exclusion." *Id.* at 295. The court went on to note that "[i]t would not be unreasonable to assume, based on the non-specific nature of Mrs. Bunk's . . . pains, that she might have been experiencing those symptoms due to any one of a number of conditions other than Burkitt's Lymphoma." *Id.* at 296.

We find the reasoning in these cases to be persuasive. In the present case, Monica's cancer was not evident as a condition in May. Her symptoms were nonspecific and "could have been caused by . . . a num-

ber of different things." Coverage should thus not be excluded under the preexisting condition clause. In order to avoid liability, the insurer must prove that the claimant was treated for the same condition before and after the policy took effect. *See Rabalais*, 671 So. 2d at 9. The record in this case does not support such a finding. Something more than general, nonspecific symptoms that become clear only by use of hindsight is required. To hold otherwise would reach an absurd result: denial of coverage would be so easy as to make the insurance contract meaningless. As stated above, we are obliged to avoid such results. We will not interpret an insurance contract to violate public policy. *Cf. Meyer v. Classified Ins. Co.*, 192 Wis. 2d 463, 468–69, 531 N.W.2d 416, 418 (Ct. App. 1995) (noting that public policy disfavors illusory coverage).

██

Because Monica's cancer was not evident until after the policy went into force, her cancer is a covered sickness under the policy and is not a preexisting condition. We therefore conclude that the breach of contract claim is revived. As to the bad faith claim, the trial court based its dismissal of the claim on the lack of contractual liability to cover Monica's cancer. Because we hold that Monica's cancer was a covered sickness, we remand for further proceedings on that claim as well.

*By the Court.*—Judgment reversed and cause remanded with directions.